**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| ALEXSAM, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CASE NO. _____ |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| CIGNA CORPORATION, CIGNA HEALTH | § | |
| AND LIFE INSURANCE COMPANY, | § | |
| CONNECTICUT GENERAL LIFE | § | |
| INSURANCE COMPANY, AND CIGNA | § | |
| HEALTHCARE OF TEXAS, INC., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF ALEXSAM, INC.'S COMPLAINT AGAINST DEFENDANTS CIGNA CORPORATION *ET AL.*

Plaintiff AlexSam, Inc. (hereinafter, "Plaintiff" or "AlexSam"), by and through its undersigned counsel, files this Complaint for Patent Infringement against Defendants Cigna Corporation ("Cigna Corp."), Cigna Health and Life Insurance Company ("CHLIC"), Connecticut General Life Insurance Company ("CGLIC"), Cigna Healthcare of Texas, Inc. ("Cigna Texas") (collectively, referred to as "Cigna" or "Defendants") as follows:

## NATURE OF THE ACTION

1.      This is a patent infringement action related to Claims 32 and 33 of Plaintiff's United States Patent Nos. 6,000,608, entitled "*Multifunction Card System*" (hereinafter, the "'608 Patent" or the "Patent-in-Suit"), which was duly and legally issued by the United States Patent and Trademark Office (hereinafter, the "USPTO") after full and fair examinations, a copy of which is attached hereto as **Exhibit A**.  Specifically, AlexSam alleges that Defendants provide their customers with a medical card, such as a card to access a Flexible Spending Account ("FSA"), Health Savings Account ("HSA"), and/or a Health Reimbursement Account ("HRA") for use in a

multifunction card system that operate on the VISA and MasterCard Networks.

## PARTIES

2.     AlexSam is a corporation organized and existing under the laws of the State of Texas.  Plaintiff maintains its principal place of business in Palm Beach County, Florida.  AlexSam owns the rights to the '608 Patent, having been assigned all right, title and interest in the '608 Patent by the sole inventor, Mr. Robert Dorf.  AlexSam possesses all rights thereto, including the exclusive right to sue for infringement and recover past damages.

3.     Upon information and belief, Cigna Corp. is a corporation duly organized and existing under the laws of the State of Delaware.

4.     Upon information and belief, Cigna Corp. has its principal place of business located at 900 Cottage Grove Rd., Bloomfield, CT 06002.

5.     Upon information and belief, CHLIC is duly organized and existing under the laws of the State of Delaware.

6.     Upon information and belief, CHLIC has its principal place of business located at 900 Cottage Grove Rd., Bloomfield, CT 06002.

7.     Upon information and belief, CGLIC is duly organized and existing under the laws of the State of Delaware.

8.     Upon information and belief, CGLIC has its principal place of business located at 900 Cottage Grove Rd., Bloomfield, CT 06002.

9.     Upon information and belief, Cigna Texas is a corporation duly organized and existing under the laws of the State of Texas.

10.     Upon information and belief, Cigna Texas has its principal place of business located at 900 Cottage Grove Rd., Bloomfield, CT 06002 and may be served through its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201-3136.

PLAINTIFF'S COMPLAINT AGAINST CIGNA CORPORATION, ET AL.

## JURISDICTION AND VENUE

11.      This action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, and 285.  This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

12.      The Court has personal jurisdiction over Defendants because: Defendants have minimum contacts within the State of Texas and in the Eastern District of Texas; Defendants have purposefully availed themselves of the privileges of conducting business in the State of Texas and in the Eastern District of Texas; Defendants have sought protection and benefit from the laws of the State of Texas; Defendants regularly conduct business within the State of Texas, and within the Eastern District of Texas, and Plaintiff's causes of action arise directly from Defendants' business contacts and other activities in the State of Texas and in the Eastern District of Texas.

13.      More specifically, Defendants, directly and/or through intermediaries, shipped, distributed, made, used, imported, offered for sale, sold, and/or advertised their products in the United States, the State of Texas and the Eastern District of Texas.  Based upon public information, Defendants have committed patent infringement in the State of Texas and in the Eastern District of Texas.  Defendants solicit customers in the State of Texas and in the Eastern District of Texas.  Defendants have many paying customers who are residents of the State of Texas and in the Eastern District of Texas and who use Defendants' products in the State of Texas and in the Eastern District of Texas.  Upon information and belief, Defendants have committed acts of infringement within this district and has regular and established places of business here, including 4616 N. Highway 75, Denison, Texas 75020 (Grayson County).  Upon information and belief, this location sold and/or offered to sell the Accused Products (as defined below).

14.      Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1400(b) because Cigna has a regular and established place of business in this district and, upon information

PLAINTIFF'S COMPLAINT AGAINST CIGNA CORPORATION, ET AL.

and belief, has committed acts of infringement in this district.

15.     Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391(b) because Cigna is subject to the personal jurisdiction of this Court because it has a regular and established place of business in this district.  Upon information and belief, Cigna employs numerous employees in the district, sold and delivered infringing Accused Products to customers in this district, and maintained equipment and other components of Cigna's infringing system located in the district.

16.     Thus, upon information and belief, jurisdiction and venue are proper because at least some of the underlying events giving rise to this lawsuit occurred in Texas.

## FACTUAL ALLEGATIONS

### A.    THE '608 PATENT: BACKGROUND ON THE INVENTION

17.     The '608 Patent was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on December 14, 1999 to its inventor, Robert Dorf.  *See* Ex. A.

18.     The '608 Patent was assigned to AlexSam, Inc. in 2003.

19.     The '608 Patent was issued after full and fair examination of application number 08/891,261 which was filed with the USPTO on July 10, 1997.  *See* Ex. A.

20.     An *ex parte* Reexamination Certificate was issued on July 10, 2012 in which re-affirmed a number of the claims of the '608 Patent.  *See* Ex. A (*ex parte* Reexamination Certificate).  Claims 32 and 33 of the '608 Patent were not reexamined as part of this reexamination.

21.     The primary purpose of the '608 Patent is to implement a multifunction card system, such as one that utilizes a rechargeable pre-paid card, a pre-paid card with a loyalty function, or a medical information card that will perform as normal bank card (credit/debit) to purchase goods and services.  *See* Ex. A, p.1 (Abstract); col. 3:9-64; "Expert Declaration Of Ivan

PLAINTIFF'S COMPLAINT AGAINST CIGNA CORPORATION, ET AL.

Zatkovich Regarding Claims 32 And 33 Of U.S. Patent No. 6,000,608", attached hereto as **Exhibit B** at ¶¶ 33-39.

22.    In 1997, the banking industry did not use personal computers and instead used large computers, such as Stratus and/or Tandem computers, which were very expensive and not capable of performing transactions using multiple types of functions.  For example, at the time, these computers could only process debit or credit transactions, but not both.  *See* Ex. B at ¶¶ 33, 40-44.

23.    Based on the state of technology in 1997, there was a need in the art for a debit/credit card capable of performing a plurality of functions, which could be accepted by any Point-Of-Sale ("POS") device, and a processing center that could manage this multifunction card system.  *See* Ex. A, '608 Patent, 1:24-35.

24.    In sum, the specific problem to be solved was that existing technology infrastructure that supported standard bank cards, and the POS devices could not support the special functions of Mr. Dorf's new multifunction card system.  *See* Ex. A at 3:9-11; Ex. B at ¶ 33.  The invention of the Processing Hub was necessary for this system to work.

25.    Mr. Dorf set out to solve the problem by inventing a multifunction card system that utilized his special-purpose computer, referred to as the Processing Hub, that worked with the existing banking network and that utilized a bank identification number (BIN) to allow for the use of a multi-function card.  *See* Ex. A at 3:9-11; Ex. B at ¶ 33.

26.    Mr. Dorf invented a new computer to avoid the limitations of the conventional systems at the time.  *See* Ex. A at 10:65-11:32; Ex. B at ¶¶ 76-80.

27.    Since a POS device and banking network did not support the special transactions of a multifunction card system, solutions where proposed by other inventors, vendors, and merchants that primarily fell into three categories:

PLAINTIFF'S COMPLAINT AGAINST CIGNA CORPORATION, ET AL.

a. **Pre-activated cards**: Cards were shipped as pre-activated to retailers and sellers so that specialized card transactions (e.g. activate card) were not required at the POS device.

b. **Bypassing a banking network**: By creating a modified POS device, or a separate activation device at the POS, merchants could implement any proprietary function at the POS that (such as activate card) that would bypass a banking network, and be processed directly by the issuing bank, for example.

c. **Activating through a non-POS device**: by providing a separate process to activate prepaid cards, such as a special software station for sales agents, or online / dial in services, the cards could be activated without the need for a standard POS or banking network.

*See* Ex. B at ¶ 40.

28.    All three of these solutions, as presented in the preceding paragraph, are technically easier to implement than that offered by the '608 Patent. This is because all three of these proposed solutions could be implemented as a standalone self-contained process, without needing to integrate with a banking network for processing specialized multi-function transactions. However, the simpler solutions, as stated in the previous above, were not 'consumer friendly' or 'merchant friendly'.  For example,

a. **Pre-activated cards:** were not safe (even with zero balance). They could be stolen and used without requiring activation;

b. **Bypassing a banking network:** required that merchants to install modified POS devices, or provide a separate POS device just to perform the specialized transactions such as activating the card; and

PLAINTIFF'S COMPLAINT AGAINST CIGNA CORPORATION, ET AL.

c. **Activating through non-POS devices**: cards purchased at a retailer could not be activated the POS device. The customer must perform a separate process to activate the card.

*See* Ex. B at ¶¶ 41-42.

29.    The '608 Patent provides practical technological solutions to specific problems, for examples "problems associated with prior art card systems." '608 Patent, 3:9-11. The foregoing problems associated with alternative approaches are why none of these solutions ever became widely implemented in the market place as was the solution disclosed in the '608 Patent. *See* Ex. B at ¶¶ 43-44.

30.    The '608 Patent provides a technological solution to the existing challenges by offering a multifunction card system that (1) did not have the security problems of pre-activated cards, (2) did not require special hardware for the merchant, and (3) provided all the convenience to consumers of normal bank cards. *See* Ex. A at 3:9-11; Ex. B at ¶ 47.

31.    The primary innovative feature offered by '608 Patent was to introduce a Processing Hub that: (1) operates as a compatible component of a banking network; (2) communicates with the retailers to perform the specialized multi-card transactions (such as activating the card); (3) allows these specialized functions to be performed on an existing unmodified POS device, and (4) does not interfere with normal debit/credit card functions for purchasing of goods and services at any merchant POS device. *See* Ex. B at ¶¶ 50-53, 76-80.

32.    A unique, novel, and inventive concept of the '608 Patent is the implementation of a new Processing Hub within a banking network and the intelligence of the Processing Hub can manage the different functions of each account. *See* Ex. B at ¶ 51.

33.     A Processing Hub is "transparent" to the POS device, yet still intercepts and

PLAINTIFF'S COMPLAINT AGAINST CIGNA CORPORATION, ET AL.

processes all the specialized transactions necessary to support multifunction cards, and still allows merchants to keep their same POS devices. *See* Ex. B at ¶¶ 54-57, 81-84.

34.     As described in the specification of '608 Patent, Mr. Dorf invented new devices and a new system that did not previously exist, including a Processing Hub and supporting system. The '608 Patent's specification describes the Processing Hub as follows:  the "Processing Hub 103, … serves as the nerve center of the system 108." Ex. A at 4:23-24. The Processing Hub can be connected to "any given POS device 105" which allows a retailer to use "the system 108 … to remotely activate or add value or loyalty data to a system card." *Id.* at 5:10-15.  Mr. Dorf's solution is more technically difficult to implement than the other proposed solutions due to the specific components that must be integrated with a banking network and still maintain the compliance of this highly regulated transaction process.  Although technically more complicated than other proposed solutions, the resulting system of the '608 Patent is more viable to merchants, more marketable, and more user acceptable in the marketplace.  *See* Ex. B at ¶¶ 71, 84.

35.     Specifically, the '608 Patent addresses specific technical problems and limitations with prior art card systems. As is explained in the specification, these limitations occur in three specific technical areas: (1) existing credit and debit cards could only perform a very limited set of electronic transactions (Ex. A at 1:24-29); (2) the pre-paid aspect of these debit cards created security problems in stores, which required them to be activated electronically after they were purchased (Ex. A at 5:23-27); and (3) there was no centralized processing center to handle the specialized transactions of these multi-function cards (Ex. A at 1:33-35).  *See also* Ex. B at ¶¶ 45-68.

36.     Each of the problems and limitations listed above existed would have to be solved within a complex regulated transactional network. Therefore, any solution to these problems would

PLAINTIFF'S COMPLAINT AGAINST CIGNA CORPORATION, ET AL.

require a reasonably sophisticated technical solution. Mr. Dorf provided this solution by inventing

new cards, new devices, and a new system.  *See* Ex. A at 3:9-11.  A large portion of this system is

illustrated in '608 Patent, Figure 2, as reproduced below:



37.    A primary component of Mr. Dorf's system that did not exist in the prior art is the

Processing Hub.  The Processing Hub accepted transactions from retailer POS devices for the

multifunction cards, such as card activation or recharge, and processed and/or transmitted those

transactions in order to complete (authorize) those transactions or reject them if not valid.  *See* Ex.

B at ¶¶ 50-57.

38.    Mr. Dorf's system is flexible enough to facility the transmission of the card

transaction between the retailer and the Processing Hub.  *See* Ex. A at 10:65-11:32; Ex. B at ¶ 93.

39.    A banking network is also a critical aspect of Mr. Dorf's system because, not only

must the card transaction be transmitted to the Processing Hub, but also to other banks and financial institutions that must participate in these transactions, including the merchant bank, the issuing bank, and 3rd party transaction agents such as merchant acquirers, and card processors acting on behalf of the banks. All of these entities must operate and communicate on a banking network including conforming to all of the standards and regulations controlling a banking network. *See* Ex. A at 4:65-67; Ex. B at ¶¶ 58-60.

40.     The combination of the unmodified pre-existing standard POS device, transaction processor, and Processing Hub into a system that allows for the multifunction card system to access debit card databases and medical databases through a banking network did not exist in 1997. As described above, the claims of the '608 Patent describe more than a collection of conventional components performing their ordinary functions. They embody improvements to acknowledged deficiencies in the art, thereby fully reflecting something substantially more than an abstract idea. *See* Ex. B at ¶¶ 71-74.

41.     Specifically, Claims 32 and 33 of the '608 Patent are tied to a particular machine - the Processing Hub - and machine system – the multifunction card system. *See* Ex. B at ¶ 70.

42.     Claims 32 and 33 of the '608 Patent are focused on a system made up of tangible components to solve the technical problem of using a multifunction card to make qualified medical purchases over a banking network using an existing POS device without having to reconfigure it to work with the system. *See* Ex. A at 3:54-63; Ex. B at ¶ 74.

43.     Claims 32 and 33 of the '608 Patent made possible the use of multifunction cards without the need for separate, stand-alone system and equipment thereby solving a technical problem within the medical goods and services industry. *See* Ex. A at 10:7-47; Ex. B at ¶ 47. In particular, Claims 32 and 33 of the '608 Patent include a Processing Hub that was not previously

PLAINTIFF'S COMPLAINT AGAINST CIGNA CORPORATION, ET AL.

available in the industry. *See* Ex. B at ¶¶ 75 80.

44.    In fact, not until approximately the 2003-2004 timeframe was Mr. Dorf's patented system available in the medical goods and services industry; therefore, his invention pre-dated by many years the FSA and HSA products that are offered today. *See* Ex. B at ¶ 39.

### B.    FOR YEARS, MR. DORF PRACTICED HIS PATENTED INVENTIONS.

45.    From 1997-2003, Mr. Dorf practiced his inventions and met with major retailers, MasterCard, VISA, Discover, health plans and doctors in an effort to connect them to his Processing Hub.

46.    Shortly after receiving his patents, Mr. Dorf developed a business, Intelligent Card Solutions, Inc. (ICS), which offered a processing platform to process transactions for Michigan National Bank, MCI and he had a joint venture with Mr. Ron Lauder of RSL company. Mr. Dorf also owned a BIN from MasterCard.

47.    Mr. Dorf's Processing Hub with ICS allowed his company to process different types of card products and transactions, such as phone cards, health cards and gift cards.

48.    ICS also worked with Oxford Health Care to build a program to show them exactly how ICS's healthcare card product could save money. This product was ultimately never launched due to financial and competitive pressures.

49.    In 1997, when Mr. Dorf applied for his '608 Patent, today's health cards, such as FSAs and HSAs, were not yet in existence and were several years away from being introduced or even permitted. *See* Ex. B at ¶ 39.

50.    Upon information and belief, Mr. Dorf was the first person to invent a multifunction card system that would allow the use of a prepaid medical card to process a transaction for an approved medical product/service. Today, FSA and HSA cards are widely offered and accepted.

51.    In 2003, after working hard to build his business and footprint in the prepaid

market, Mr. Dorf was unable to compete with larger companies.  In reaction to this widespread of infringement of its patent rights and after being forced out of the industry, Mr. Dorf founded AlexSam in 2003 to which was assigned all rights to enforce the '608 Patent.

52.    Since its inception in 2003, AlexSam has entered various business and license agreements to the AlexSam Patents and to Mr. Dorf's know-how.  AlexSam has licensed the AlexSam Patents to Humana, WEX Health (formerly, Evolution Benefits) and Unitedhealthcare in the medical card industry.

53.    AlexSam has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the '608 Patent.

54.    AlexSam does not sell, offer to sell, make, or use any products itself, so it does not have any obligation to mark any of its own products under 35 U.S.C. § 287.

55.    Each of AlexSam's licensee's is contractually-obligated to comply with the marking provisions of 35 U.S.C. § 287 with respect to the '608 Patent.

56.    On information and belief, prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287 with respect to the '608 Patent.

## C. LETTER AND NOTICE TO CIGNA

57.    According to public information, Cigna owns, operates, advertises, and/or controls the website, www.Cigna.com, as well as various office locations and representatives across the country, through which Cigna sold, advertised, offered for sale, used, or otherwise provided, including but not limited to, the following products (the "Accused Products"): Health Savings Account ("HSA") Debit Cards, Flexible Spending Account ("FSA") Debit Cards,  Health Reimbursement Account ("HRA") Debit Cards and the Cigna Choice Fund™ Card.  Pictured below is an example of a "VISA Accused Product":

PLAINTIFF'S COMPLAINT AGAINST CIGNA CORPORATION, ET AL.



Pictured below is an example of a "MasterCard Accused Product":



58.     Evidence obtained from Defendants' websites regarding these products is provided in the claim charts provided at **Exhibit C** (Cigna's VISA Debit Card) and **Exhibit D** (Cigna Choice Fund™ Card).

59.     Based on the information obtained from Defendants' websites and various publications/brochures, on July 28, 2015, AlexSam sent Cigna a letter (hereinafter, the "2015 Notice Letter to Cigna"), informing them that "at least the following products require a license

PLAINTIFF'S COMPLAINT AGAINST CIGNA CORPORATION, ET AL.

under the '608 Patent: Cigna Debit Card." *See* **Exhibit E**.

60.      The 2015 Notice Letter to Cigna, among other things, suggested "licensing negotiations with Cigna Corporation, and in particular its subsidiaries including Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company…." *See* **Exhibit E**.

61.      Upon information and belief, no response was ever received to the 2015 Notice Letter to Cigna, and Cigna continued to offer their infringing products.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 6,000,608 BY PRODUCTS THAT OPERATE ON THE VISA NETWORK

62.      Plaintiff hereby incorporate each and every allegation as though fully set forth herein.

63.      Defendants have directly infringed either literally or under the doctrine of equivalents Claims 32 and 33 of the '608 Patent (hereinafter, the "Asserted Claims") because they shipped, distributed, made, used, imported, offered for sale, sold, and/or advertised the Accused Products that operate on the VISA Network (hereinafter, the "VISA Accused Products").

64.      Specifically, Defendants' VISA Accused Products infringed, and met each and every element of the Asserted Claims, either literally or equivalently, by providing a multifunction card system, containing at least one debit/medical services card. *See* Ex. C and Attachments thereto. In addition, the VISA Accused Products have a BIN approved by the American Banking Association. This BIN allows Defendants to properly route payment transactions within a banking network. *See* Ex. B at ¶¶ 58-61**.** Defendants' VISA Accused Products were available to individuals participating in a healthcare benefits program located in this district and throughout the United States. *See* Ex. C.

65.      Upon information and belief, Defendants are in the business of selling and offering

PLAINTIFF'S COMPLAINT AGAINST CIGNA CORPORATION, ET AL.

for sale the VISA Accused Products to customers throughout the United States, including the state of Texas. Defendants owned, operated, or leased all equipment in the infringing system, or alternatively exercised direction and control over the operation of all equipment in the infringing system in order to provide the benefit of debit/medical services cards to their customers. *See* Ex. C.

66. Upon information and belief, Defendants employed staff (e.g., an IT department) to operate the Processing Hub in order to interface with, install, configure, manage, monitor, test, and control the debit/medical services cards and other equipment in the infringing multifunction card system. *See* Ex. C.

67. By using the infringing networks, making and configuring the systems, and selling products generated through the use of the systems, Defendants directly infringed one or both of the Asserted Claims. *See* Ex. C. On information and belief, Defendants installed, tested, configured, and serviced equipment in the infringing system, thereby making and using the systems disclosed in the Asserted Claims and infringing those claims under 35 U.S.C. § 271(a).

68. Defendants undertook their infringing actions despite an objectively high likelihood that such activities infringed one or more of the Asserted Claims, which has been duly issued by the USPTO and is presumed valid under 35 U.S.C. § 282(a). *See* Ex. A. For example, since at least July 28, 2015, Defendants have been aware of an objectively high likelihood that their actions constituted infringement of claims of the '608 Patent and that the '608 Patent is valid. *See* Ex. E.

69. Defendants' use of the infringing networks, the making and configuration of the systems, and the sale of products generated through the use of the systems constitutes direct infringement of the Asserted Claims.

PLAINTIFF'S COMPLAINT AGAINST CIGNA CORPORATION, ET AL.

70.    On information and belief, Defendants could not reasonably, subjectively believe that their actions did not constitute infringement of the Asserted Claims.  Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constituted infringement, Defendants continued their infringing activities.  As such, Defendants willfully infringed the Asserted Claims.

71.    On information and belief, Defendants intentionally induced infringement of the Asserted Claims and committed contributory infringement in this district and elsewhere in the United States, by providing the hardware and/or software necessary for their customers to make or use the infringing multifunction card system.

72.    On information and belief, despite knowledge of the '608 Patent as early as July 28, 2015 (*see* Ex. E), Defendants continued to encourage, instruct, enable, and otherwise caused their customers to sell the VISA Accused Products in a manner which infringes the Asserted Claims.  Defendants received revenue from the provision of, sale and use of the VISA Accused Products.  Defendants have specifically intended their customers to use the VISA Accused Products in their infringing systems in such a way that infringes the Asserted Claims by, at a minimum, providing and supporting the VISA Accused Products and instructing their customers on how to use them in an infringing manner, at least through information available on Defendants' websites including information brochures, promotional material, and contact information.  *See* Ex. C.

73.    On information and belief, Defendants knew that their actions, including, but not limited to any of the VISA Accused Products, would induce and have induced infringement by their customers by continuing to sell, support, and instruct their customers on using the VISA Accused Products.  *Id.*

PLAINTIFF'S COMPLAINT AGAINST CIGNA CORPORATION, ET AL.

74.     On information and belief, Defendants contributed to the infringement of one or both of the Asserted Claims by their customers.  Acts by Defendants that contributed to the infringement of these customers include providing the Processing Hub, which is capable of authorizing, approving, and declining payments at healthcare providers and pharmacies for eligible services, goods, and prescriptions.  The use of the Processing Hub computers was especially adapted for use in the infringing systems, and it has no substantial non-infringing uses.  On information and belief, Defendants knew or should have known that such activities contributed to their customers' infringement of the Asserted Claims.

75.     On information and belief, despite knowledge of the '608 Patent as early their receipt of the 2015 Notice Letter to Cigna, Defendants continued to encourage, instruct, enable, and otherwise caused their customers to sell the VISA Accused Products in a manner which infringes the Asserted Claims.  Defendants received revenue from the provision of and sale of the VISA Accused Products.  Defendants specifically intended their retailers and customers to use the VISA Accused Products in their infringing systems in such a way that infringed the Asserted Claims by, at a minimum, providing and supporting the VISA Accused Product and instructing their customers on how to use them in an infringing manner, at least through information available on Defendants' website including information brochures, promotional material, and contact information.  *See* Ex. C.

76.     On information and belief, Defendants knew that their actions, including, but not limited to any of the aforementioned VISA Accused Products, would induce and have induced, infringement by their customers by continuing to sell, support, and instruct their customers on using the VISA Accused Products.  *See id.*

77.     On information and belief, Defendants contributed to the infringement the Asserted

PLAINTIFF'S COMPLAINT AGAINST CIGNA CORPORATION, ET AL.

Claims by their customers, providers and/or retailers. Acts by Defendants contributed to the infringement of these retailers by providing the POS devices and bank Processing Hub computers which are capable of initiating the activation and loyalty point crediting processes. On information and belief, Defendants knew or should know that such activities contributed to their retailers' infringement of the Asserted Claims.

78.    At least as early as their receipt of the 2015 Notice Letter to Cigna, Cigna knew of the '608 Patent and performed acts that they knew, or should have known, induced and/or contributed to the direct infringement of the Asserted Claims by their customers, providers, and/or retailers. *See* Ex. E.

79.    Defendants' aforesaid activities have been without authority and/or license from Plaintiff.

80.    Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

81.    Plaintiff is entitled to recover from Defendants enhanced damages sustained by Plaintiff as a result of Defendants' willful infringement due to Defendants' knowledge of their infringement prior to the filing of this matter, as allowed under 35 U.S.C. § 284.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 6,000,608 BY PRODUCTS THAT OPERATE ON THE MASTERCARD NETWORK

82.    Plaintiff hereby incorporate each and every allegation as though fully set forth herein.

83.    Defendants have directly infringed either literally or under the doctrine of

equivalents 33 of the '608 Patent (hereinafter, "Claim 33") because they shipped, distributed, made, used, imported, offered for sale, sold, and/or advertised the Accused Products that operate on the MasterCard Network (hereinafter, the "MasterCard Accused Products").

84.     Specifically, Defendants' MasterCard Accused Products infringed, and met each and every element of Claim 33, either literally or equivalently, by providing a multifunction card system, containing at least one debit/medical services card.  *See* Ex. D and Attachments thereto**.** In addition, the MasterCard Accused Products have a BIN approved by the American Banking Association.  This BIN allows Defendants to properly route payment transactions within a banking network.  *See* Ex. B at ¶¶ 58-61**.**  Defendants' MasterCard Accused Products are available to individuals participating in a healthcare benefits program located in this district and throughout the United States.  *See* Ex. D.

85.     Upon information and belief, Defendants were in the business of selling and offering for sale the MasterCard Accused Products to customers throughout the United States, including the state of Texas.  Defendants owned, operated, or leased all equipment in the infringing system, or alternatively exercised direction and control over the operation of all equipment in the infringing system in order to provide the benefit of debit/medical services cards to their customers. *See* Ex. D.

86.     Upon information and belief, Defendants employed staff (e.g., an IT department) to operate the Processing Hub in order to interface with, install, configure, manage, monitor, test, and control the debit/medical services cards and other equipment in the infringing multifunction card system.  *See* Ex. D.

87.     By using the infringing networks, making and configuring the systems, and selling products generated through the use of the systems, Defendants have directly infringed one or both

PLAINTIFF'S COMPLAINT AGAINST CIGNA CORPORATION, ET AL.

of the Claim 33.  *See* Ex. D.  On information and belief, Defendants installed, tested, configured, and serviced equipment in the infringing system, thereby making and using the systems disclosed in Claim 33 and infringing that claim under 35 U.S.C. § 271(a).

88.    Defendants undertook and continue their infringing actions despite an objectively high likelihood that such activities infringed Claim 33, which has been duly issued by the USPTO and is presumed valid under 35 U.S.C. § 282(a).  *See* Ex. A.  For example, since at least July 28, 2015, Defendants have been aware of an objectively high likelihood that their actions constituted infringement of claims of the '608 Patent and that the '608 Patent is valid.

89.    Defendants' use of the infringing networks, the making and configuration of the systems, and the sale of products generated through the use of the systems constitutes direct infringement of Claim 33.

90.    On information and belief, Defendants could not reasonably, subjectively believe that their actions did not constitute infringement of Claim 33.  Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants continued their infringing activities.  As such, Defendants willfully infringed Claim 33.

91.    On information and belief, Defendants intentionally induced infringement of the Claim 33 and have committed contributory infringement in this district and elsewhere in the United States, by providing the hardware and/or software necessary for their customers to make or use the infringing multifunction card system.

92.    On information and belief, despite knowledge of the '608 Patent as early as June 15, 2015 (*see* Ex. F and Ex. H), Defendants continued to encourage, instruct, enable, and otherwise caused their customers to sell the MasterCard Accused Products in a manner which infringes Claim

PLAINTIFF'S COMPLAINT AGAINST CIGNA CORPORATION, ET AL.

33.  Defendants received revenue from the provision of, sale and use of the MasterCard Accused Products.  Defendants have specifically intended their customers to use the MasterCard Accused Products in their infringing systems in such a way that infringes Claim 33 by, at a minimum, providing and supporting the MasterCard Accused Products and instructing their customers on how to use them in an infringing manner, at least through information available on Defendants' website including information brochures, promotional material, and contact information.  *See* Ex. D.

93.    On information and belief, Defendants knew that their actions, including, but not limited to any of the MasterCard Accused Products, would induce and have induced infringement by their customers by continuing to sell, support, and instruct their customers on using the MasterCard Accused Products.  *Id.*

94.    On information and belief, Defendants contributed to the infringement of Claim 33 by their customers.  Acts by Defendants that contribute to the infringement of these customers include providing the Processing Hub, which is capable of authorizing, approving, and declining payments at healthcare providers and pharmacies for eligible services, goods, and prescriptions. The use of the Processing Hub computers is especially adapted for use in the infringing systems, and it has no substantial non-infringing uses.  On information and belief, Defendants knew or should have known that such activities contribute to their customers' infringement of Claim 33.

95.    On information and belief, despite knowledge of the '608 Patent as early their receipt of the 2015 Notice Letter to Cigna, Defendants continued to encourage, instruct, enable, and otherwise cause their customers to sell the MasterCard Accused Products in a manner which infringes Claim 33.  Defendants received revenue from the provision of and sale of the MasterCard Accused Products.  Defendants have specifically intended their retailers and customers to use the

PLAINTIFF'S COMPLAINT AGAINST CIGNA CORPORATION, ET AL.

MasterCard Accused Products in their infringing systems in such a way that infringes Claim 33 by, at a minimum, providing and supporting the Mastercard Accused Products and instructing their customers on how to use them in an infringing manner, at least through information available on Defendants' website including information brochures, promotional material, and contact information. *See* Ex. D.

96.    On information and belief, Defendants knew that their actions, including, but not limited to any of the aforementioned MasterCard Accused Products, would induce and have induced infringement by their customers by continuing to sell, support, and instruct their customers on using the MasterCard Accused Products. *See id.*

97.    On information and belief, Defendants contributed to the infringement of Claim 33 by their customers, providers and/or retailers.  Acts by Defendants that contributed to the infringement of these retailers included providing the POS devices and bank Processing Hub computers which were capable of initiating the activation and loyalty point crediting processes. On information and belief, Defendants knew or should know that such activities contributed to their retailers' infringement of Claim 33.

98.    At least as early as their receipt of the 2015 Notice Letter to Cigna, Cigna knew of the '608 Patent and performed acts that they knew, or should have known, induced and/or contributed to the direct infringement of Claim 33 by their customers, providers, and/or retailers. *See* Ex. F and Ex. H.

99.    Defendants' aforesaid activities were without authority and/or license from Plaintiff.

100.    Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' wrongful acts in an amount subject to proof at trial, which, by law,

PLAINTIFF'S COMPLAINT AGAINST CIGNA CORPORATION, ET AL.

cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

101.    Plaintiff is entitled to recover from Defendants enhanced damages sustained by Plaintiff as a result of Defendants' willful infringement due to Defendants' knowledge of their infringement prior to the filing of this matter, as allowed under 35 U.S.C. § 284.

## JURY DEMAND

102.    Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

103.    Plaintiff respectfully requests the following relief:

A.    An adjudication that the Asserted Claims have been infringed, either literally and/or under the doctrine of equivalents, by the Defendants' VISA Accused Products;

B.    An adjudication that Defendants have induced infringement of the Asserted Claims by the VISA Accused Products;

C.    An adjudication that Defendants have contributed to the infringement of the Asserted Claims by the VISA Accused Products;

D.    An adjudication that Claim 33 of the '608 Patent has been infringed, either literally and/or under the doctrine of equivalents, by the Defendants' MasterCard Accused Products;

E.    An adjudication that Defendants have induced infringement of Claim 33 of the '608 Patent by the MasterCard Accused Products;

F.    An adjudication that Defendants have contributed to the infringement of Claim 33 of the '608 Patent by the MasterCard Accused Products;

G.    An adjudication that Defendants' acts of infringement have been willful;

PLAINTIFF'S COMPLAINT AGAINST CIGNA CORPORATION, ET AL.

H.    An award of damages to be paid by Defendants adequate to compensate Plaintiff for Defendants' past infringement, including interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Plaintiff for Defendants' infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial;

I.    That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and,

J.    Any further relief that this Court deems just and proper.

PLAINTIFF'S COMPLAINT AGAINST CIGNA CORPORATION, ET AL.

Dated: <u>March 18, 2020</u>

Respectfully submitted,

By: */s/ Jacqueline K. Burt*
Jacqueline K. Burt
Jonathan R. Miller
Travis E. Lynch
**HENINGER GARRISON DAVIS, LLC**
3621 Vinings Slope, Suite 4320
Atlanta, Georgia 30339
Telephone: (404) 996-0861, -0863, -0867
Facsimile: (205) 547-5502, -5506, -5515
Email: jburt@hgdlawfirm.com
Email: jmiller@hgdlawfirm.com
Email: tlynch@hgdlawfirm.com

***Attorneys for Plaintiff AlexSam, Inc.***

PLAINTIFF'S COMPLAINT AGAINST CIGNA CORPORATION, ET AL.

## LIST OF EXHIBITS

A.  United States Patent No. 6,000,608

B.  Expert Declaration Of Ivan Zatkovich Regarding Claims 32 And 33 Of U.S. Patent No. 6,000,608

C.  Infringement Analysis for Cigna's Visa Debit Card

D.  Infringement Analysis for Cigna's Choice Fund Card

E.  Notice Letter dated July 28, 2015

PLAINTIFF'S COMPLAINT AGAINST CIGNA CORPORATION, ET AL.