IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ALEXSAM, INC., § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Case No. 2:20-cv-00081-JRG-RSP |
| § | (LEAD CASE) |
| § | |
| CIGNA CORPORATION, CIGNA § | |
| HEALTH AND LIFE INSURANCE § | |
| COMPANY, CONNECTICUT GENERAL § | |
| LIFE INSURANCE COMPANY, and § | |
| CIGNA HEALTHCARE OF TEXAS, INC., § | |
| § | |
| *Defendants*. § | |

**REPORT AND RECOMMENDATION**

Before the Court are two motions[1]: (1) Motion for Summary Judgment of Non-Infringement ("Non-Infringement Motion")[2] filed by Defendants Cigna Corporation, Cigna Health and Life Insurance Company, Connecticut General Life Insurance Company, and Cigna Healthcare of Texas, Inc. (collectively, the "Defendants" or "Cigna") (Dkt. No. 111) and (2) Motion for Summary Judgment of Infringement ("Infringement Motion")[3] filed by Plaintiff Alexsam, Inc. (Dkt. No. 117).[4]

---

[1] Before the Court is also the Request to Supplement the Record Before the Court Regarding Defendants' Motion for Summary Judgment of Non-Infringement ("Motion to Supplement"), filed by Plaintiff. Dkt. No. 201. The Motion to Supplement is **GRANTED**, as the Court has reviewed the additional excerpts from the expert report and the Alegeus deposition and finds that they do not change the outcome recommended herein. In view of the Court's rulings, Defendants' Motion to Strike Alexsam's "Reply" Brief Allegedly Supporting its Motion for Leave to Supplement the MSJ Record is **DENIED AS MOOT**. Dkt. No. 208.

[2] On July 30, 2021, the Defendants filed their Non-Infringement Motion. Dkt. No. 111. On August 9, 2021, Alexsam filed its response to the Non-Infringement Motion. Dkt. No. 137. On August 17, 2021, Defendants filed their reply brief. Dkt. No. 156. On August 24, 2021, Alexsam filed its sur-reply. Dkt. No. 181.

[3] On July 30, 2021, Alexsam filed their Infringement Motion. Dkt. No. 117. On August 9, 2021, Defendants filed their response to the Infringement Motion. Dkt. No. 132. On August 17, 2021, Alexsam filed its reply brief. Dkt. No. 161. On August 25, 2021, Defendants filed their sur-reply. Dkt. No. 184.

[4] On September 2, 2021 the Court held a pretrial conference and heard argument on the motions. Dkt. No. 197; Dkt. No. 202.

## I.        BACKGROUND

### A.        The Patent and this Litigation

On March 18, 2020, Alexsam filed the present lawsuit. Dkt. No. 1. Alexsam alleges the Defendants infringe Claims 32 and 33 of U.S. Pat. No. 6,000,608 ("'608 Patent"). Dkt. No. 1 ¶ 1. The '608 Patent, entitled "Multifunction Card System," issued on December 14, 1999, and bears a filing date of July 10, 1997. Claims 32 and 33 of the '608 Patent recite:

> 32. A multifunction card system comprising:
> a.   at least one debit/medical services card having a unique identification number encoded on it comprising a bank identification number approved by the American Banking Association for use in a banking network;
> b.   a transaction processor receiving card data from an unmodified existing standard point-of-sale device, said card data including a unique identification number;
> c.   a processing hub receiving directly or indirectly said card data from said transaction processor; and
> d.   said processing hub accessing a first database when the card functions as a debit card and said processing hub accessing a second database when the card functions as a medical card.
>
> 33. The multifunction card system of claim 32, wherein the unique identification number further comprises a medical identification number.

Alexsam alleges that Defendants infringe the '608 Patent by providing multifunction card systems that allow its customers to access medical accounts (e.g. Health Savings Accounts) to purchase medical items or services. Dkt. No. 1 ¶ 1.

### B.        Previous Litigation

The '608 Patent has been the subject of substantial litigation before this Court (though not necessarily Claims 32 and 33) several times over the last two decades. *See e.g. Alexsam, Inc. v. Datastream Card Services, Ltd., et al.*, No. 2:03-cv-337 (E.D. Tex. 2003) ("*Datastream*");

*Alexsam, Inc. v. IDT Corp.*, No. 2:07-cv-420 (E.D. Tex. 2007) ("IDT District Court Case").[5] The IDT District Court Case and its subsequent appeal are particularly noteworthy. *Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336 (Fed. Cir. 2013) ("*IDT*").

In the IDT District Court Case, Alexsam accused defendant IDT of infringing claims 57 and 58 of the '608 Patent by activating phone cards and prepaid gift cards. *See IDT*, 715 F.3d at 1339. Alexsam accused IDT of controlling systems by which the various cards could be activated. *See id.* at 1339–40. In the IDT District Court Case, the jury returned a verdict in favor of Alexsam on all issues. *Id.* at 1341. One issue in the appeal of the IDT District Court Case was whether Alexsam presented sufficient "evidence that the Walgreens and EWI systems included 'an unmodified existing standard retail point-of-sale device.'" *Id*. The Federal Circuit concluded that Alexsam did not sufficiently carry its burden to prove infringement. *Id.* at 1342 ("We conclude that Alexsam failed to present substantial evidence that the terminals used in IDT's Walgreens and EWI systems 'ha[d] not been reprogrammed, customized, or otherwise altered with respect to [their] software . . . for use in the card system.'").

## II.     LEGAL STANDARDS

### A.     Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party opposing summary judgment must identify specific evidence in the record and articulate the precise way the evidence supports his or her claim. *See Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "Only disputes over facts that might affect the

---

[5] Dkt. No. 58-6 contains both the *Datastream* and IDT District Court Case claim construction Orders.

3

outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine material fact dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

"By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Id.* at 247-48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. "If, after adequate time for discovery, a party cannot produce proof that it has facts to support its case, then the case should be resolved at that point, and this is true irrespective of the type of case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994). "Summary judgment is appropriate in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Little*, 37 F.3d at 1075 (quoting *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993)). It should be noted, Fed. R. Civ. P. 56 does not impose a duty on the Court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Ragas*, 136 F.3d at 458.

### B. Non-Infringement

> Infringement analysis is a two-step process: "First, the court determines the scope and meaning of the patent claims asserted . . . [and secondly,] the properly construed claims are compared to the allegedly infringing device." Step one, claim construction, is a question of law . . . . Step two, comparison of the claims to the accused device, is a question of fact and requires a determination that every claim limitation or its equivalent be found in the accused device.

*N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1344 (Fed. Cir. 2005) (alteration in original) (internal citations omitted). Infringement "requires that every limitation of

4

the patent claim be found in the accused [device]." *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997). "There can be no infringement as a matter of law if a claim limitation is totally missing from the accused device." *Wallace London & Clemco Prods. v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538 (Fed. Cir. 1991). A finding of "non-infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim is found in the accused device either literally or under the doctrine of equivalents." *Advanced Steel Recovery, LLC v. X-Body Equipment, Inc.*, 808 F.3d 1313 (Fed. Cir. 2015). The non-infringement analysis at the summary judgment stage requires the Court to compare the patent claims as construed with the accused device. *See Convolve, Inc. v. Compaq Computer Corp.*, 812 F.3d 1313, 1317 (Fed. Cir. 2016).

### III. ANALYSIS[6]

The focus of this motion is whether Alexsam has offered sufficient evidence to create an issue of genuine fact as to whether the accused system uses "unmodified existing standard point-of-sale [POS] device[s]." The Federal Circuit's *IDT* decision is the lens through which the Court should evaluate the construction of "unmodified" as well as the evidence necessary to show the accused system practices the "unmodified" term.

#### A. Claim Construction of "unmodified existing standard POS device"

The term "unmodified existing standard POS device" was construed by the Court in its Claim Construction Memorandum and Order. Dkt. No. 71. As set forth in the Claim Construction Order:

---

[6] The Court need not reach the other issues presented in the Non-Infringement Motion since Alexsam cannot meet its burden to create an issue of fact with respect to the "unmodified existing standard point-of-sale [POS] device" limitation.

> Shortly before the start of the April 14, 2021 hearing, the Court provided the parties with the following preliminary construction: ***"a terminal, for making purchases, that is of the type in use as of July 10, 1997, and that has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware for use in the card system."*** Both sides agreed to the Court's preliminary construction.

*Id*. at 59 (emphasis added).[7]

As Alexsam acknowledges, this is not the first time this term has had a similar construction. It "has been consistently construed by many courts (including this Court) since June 10, 2005 in the *Datastream* case . . . ." Dkt. No. 50 at 43. This Court largely adopted the *Datastream* construction, except with the addition of commas offsetting the "for making purchases" phrase. The Court construed the term in this manner to clarify and denote that the phrase "of the type in use as of July 10, 1997" modifies the word "terminal"—not "purchases." Thus, the Court substantively imported the previous *Datastream* construction, with the addition of clarifying commas.

The *Datastream* Court made two important notes about the "unmodified," "existing," and "standard" terms. The first note is that the terms "standard" and "existing" "are implicitly time dependent" which requires the claim scope to be limited to "types of devices in existence as of July 10, 1997." *Datastream*, Dkt. No. 199, at 8–9. The second note is to the meaning of "unmodified," namely that "[i]t is a stretch of grammar to propose a construction of the simple word 'unmodified' that is divorced from the meaning ***actually implied*** by the word itself, ***which is without modification***." *Id*. (emphasis added).

Despite accepting this Court's previous claim construction, Alexsam now argues that the accepted scope of "unmodified" is over broad and requires narrowing. Dkt. No. 137 at 17–19 ("As is explained below, it is important to note that only specific programming, customization, or

---

[7] Citations are to document numbers and page numbers assigned through ECF.

6

alterations would cause a POS device to fall outside of the scope of asserted claim 32. That is, programming, customization, or alteration is required for purposes other than 'for use in the card system.' . . . In short, 'modified,' closed systems (such as Stimson) stood in contrast to the system disclosed and claimed in the '608 Patent, the latter of which utilized existing POS devices to utilize the existing banking network."). In essence, Alexsam urges this Court to cabin the broad construction of "unmodified" by strictly interpreting the "for use in the card system" phrase. Alexsam's entire infringement theory appears to rest on this unusual interpretation. Alexsam requests the Court to reconstrue "unmodified" such that a POS terminal will be "modified" only if it "require[s] single-function dedicated hardware" or software to operate in the accused system. *See id*. at 21. To support its argument, Alexsam criticizes the Federal Circuit's *IDT* decision and asks this Court to disregard binding precedent. *See id*. ("The Federal Circuit case cited by Defendants suffers from the same overbreadth and similarly did not consider the meaning of the critical phrase."); *see also id*. at 4 ("[the *IDT*] case cited by Defendants made the same oversight as Defendants' expert Mr. Dreifus—both overlooked the phrase 'for use in the card system' portion of the construction—and misapply this construction as to what can and cannot be modified on the POS device."); Dkt. No. 161 at 5–6 ("[T]he court in *IDT* and Defendants, including Mr. Dreifus, fail to properly apply the Court's construction for the 'unmodified existing standard [POS] device' limitation, in particular the 'for use in the card system' portion of the construction. . . . the court in IDT ***erred*** by ruling that the POS devices cannot be modified in any way as opposed to the plain language of the construction that merely requires any such modifications be restricted to modifications 'for use in the card system.'" (emphasis added)). The argument that this Court should disregard the holding of the Federal Circuit on construction of the same limitation in another claim of the patent in suit is doomed to fail.

7

First, *IDT* is applicable. Alexsam argues that because the claim term at issue in *IDT* was "unmodified existing standard ***retail*** point-of-sale [POS] device," and the term at issue in this litigation is "unmodified existing standard point-of-sale [POS] device," this Court should disregard *IDT*. *See* Dkt. No. 202 at 143–148; *see also* Dkt. No. 161 at 4–5. Alexsam's argument rings hollow. Though the two claims' terms are not necessarily interchangeable,[8] the claim terms at issue here are the same— "unmodified," "standard," and "existing." *See Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.*, No. 9:06-cv-151-KFG, 2009 WL 5842062, at *3 (E.D. Tex. Mar. 30, 2009). "Retail" is not at issue, the issue before the Court is to decide what is the proper understanding, scope, and evidence required to satisfy the "unmodified," "standard," and "existing" terms in Claim 32. To put aside *IDT* and refuse to give it any weight, as Alexsam advocates, flies in the face of *stare decisis*. *See United States v. 422 Casks of Wine*, 26 U.S. 547, 549 (1828).

Second, the Court declines to hear waived claim construction arguments that could have and should have been raised in the first instance during claim construction. *Intell. Ventures II LLC v. BITCO Gen. Ins. Corp.*, No. 6:18-CV-00298-JRG, 2019 WL 999902, at *3 (E.D. Tex. Feb. 28, 2019) (citing *Battcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 640–41 (Fed. Cir. 2011)). These arguments should not appear for the first time in an opposition to a motion for summary judgment, particularly given that it should have been obvious these issues would arise.

Third, even assuming *arguendo* that the Court were to entertain Alexsam's arguments, they have previously been rejected. Alexsam attempts to repackage[9] arguments the *Datastream* Court rejected. *Compare Datastream*, Dkt. No. 199 at 7–9 *with Datastream*, Dkt. No. 159 at 15–16; *Datastream*, Dkt. No. 167 at 16–18. The *Datastream* Court rejected Alexsam's argument that

---

[8] "Unmodified existing standard retail point-of-sale [POS] device" term is from independent Claim 57 of the '608 Patent while "unmodified existing standard point-of-sale [POS] device" is from independent Claim 32.

[9] Alexsam has made no mention that these were arguments were previously presented to this Court nearly twenty years ago.

"unmodified existing standard retail point-of-sale [POS] device" "means 'a device such as a stand-alone POS terminal, cash register with POS interfacing, computer with POS interfacing or other similar device that recognizes bank identification numbers, *other than for use in a closed system*.'" *Datastream*, Dkt. No. 199 at 7 (emphasis added). The *Datastream* Court rejected this argument when it issued its construction of the "unmodified existing standard retail point-of-sale [POS] device" term and stated that "[i]t is a stretch of grammar to propose a construction of the simple word 'unmodified' that is divorced from the meaning actually implied by the word itself, which is *without modification.*" *Id*. at 9. *Datastream* refused to limit "unmodified" to mean "other than for use in a closed system," which Alexsam argued was all that was necessary to avoid the Stinson prior art reference. Therefore, any modification to the software or hardware that impacts how the POS device would be used in the card system would fall outside of the scope of the claims. Indeed, the claim language limits the scope of the claims to the "types of devices in existence as of July 10, 1997" and that those devices are "w*ithout modification*." *See id*. at 8–9.

Perhaps most importantly, Alexsam's proposed construction conflicts directly with the Federal Circuit's *IDT* holding. Alexsam argues that the *IDT* "panel" "overlooked the phrase 'for use in the card system' . . . ." Dkt. No. 137 at 4. However, a review of *IDT* reveals that the Federal Circuit did indeed consider the meaning of "for use in the card system." *IDT*, 715 F.3d at 1341 ("Alexsam needed to prove both that these systems made use of terminals 'of the type in use as of July 10, 1997,' and also that those terminals 'ha[d] not been reprogrammed, customized, or otherwise altered with respect to [their] software . . . *for use in the card system*.'" (emphasis added)). The Federal Circuit reviewed the IDT District Court Case claim construction, which is virtually identical to this Court's claim construction, and left it undisturbed. *Id*. Further, *IDT* squarely rejects Alexsam's proposed construction and articulates that the claim language is not

limited to "closed systems" but rather is applicable to all POS terminal devices used in the accused system (regardless of "closed" or "open" status). *See id*. at 1341–42. *IDT* holds that Alexsam needed to prove whether any POS terminal used in the accused system was modified, at all, with respect to its hardware or software (i.e. without modification); not whether the terminals used in the accused system were solely modified for the purpose of being used in the accused system.

### B. Evidentiary Standard of "unmodified existing standard POS device"

To withstand summary judgment, under the *IDT* standard articulated for "unmodified existing standard POS device," Alexsam has to show there are genuine questions of fact that the accused system "made use of terminals 'of the type in use as of July 10, 1997,' **and** also that the terminal 'has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware for use in the card system.'" *Id*. at 1341. The Court understands the requirement that the accused devices be "of the type in use as of July 10, 1997" as a reference to the "standard" and "existing" limitations and the "has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware for use in the card system" as a reference to the "unmodified" limitation.

Alexsam contends that, even if the Court were to apply the *IDT* standard, the evidence it has presented creates a genuine issue of material fact. Dkt. No. 202 at 147–48. In particular, Alexsam relies on its expert's report and the deposition testimony of Mr. Derek Holmes of Alegeus. Alegeus is a third-party organization that processes the card transactions for the accused products. *See id*. at 146–59; *see also* Dkt. No. 201-1 at 3–8.

Alexsam contends that the expert report of Mr. Ivan Zatkovich, in view of Mr. Holmes' testimony, is evidence that is sufficiently different than the evidence it offered in *IDT*. S*ee* Dkt. No. 201-1 at 3–8. The *IDT* Court stated:

> Alexsam's main witness on infringement was Robert Baker . . . [he] testified on two occasions, without elaboration, that the terminals used in IDT's card activations were "unmodified." . . . Baker testified that "Walgreens' terminals are similar to or the same as terminals in use in July of 1997" with regard to their "basic functions"; that the terminals "are the same as terminals that existed in July of 1997 from the standpoint that they are able to read a standard . . . card"; and that "no modification was required" because IDT's system "requires the same capabilities as reading a standard credit card or debit card." He also testified that the terminals used to activate IDT's phone cards are "the same as terminals that existed in July of '97 with respect to the ability to read a magnetic stripe and send that information on to the next step without any modifications made to that terminal in that respect."
>
> At no point did Baker testify, *except in the cursory manner described above*, that no modifications *were **actually** made to the terminals*' software in order to allow them to activate IDT's cards. Indeed, Baker admitted on cross-examination that *his testimony was limited to what was "required" in order to activate an IDT card*, and that he had not expressed an opinion as to whether *the actual POS terminals* used in the IDT systems had been "reprogrammed, customized, or otherwise altered" *in any way*. He further testified that he had not spoken with IDT's retail or intermediary partners or with POS suppliers about the terminals used in IDT's systems.
>
> Alexsam's other witness, Brent Hranicky, testified that no modifications were "necessary" to allow a standard POS terminal to read an IDT card, and that terminals in use in 1997 could perform "the same basic functions for use in a card system that are performed by point-of-sale devices today." . . . he did not "know for sure *whether modifications have, in fact, been made for any reason* to" the terminals.

*IDT*, 715 F.3d at 1341–42 (emphasis added). Here too Alexsam offers the same evidence.

Mr. Zatkovich's report misses the mark with respect to what is required by *IDT*. Dkt. No. 118-3 at 66–69 ("10.4.1 The Market requires the use of standardized POS devices" "10.4.4 No POS device needs to be modified"). Since Mr. Zatkovich (and Alexsam) relied on an improper claim construction interpretation, the resulting opinions suffer from the same defects as the evidence offered in *IDT*. *Id*. at 66 ("This does not mean that today's POS devices are identical in every aspect to those devices available in 1997. It also does not mean that that new features and functions can't be present in a POS device and not meet this limitation. New Features and functions post-1997 are non-essential or not applicable to Cigna card functions. . . . no modifications are

11

*required* to pre-1997 POS devices to transmit Cigna medical services card transactions such as paying for prescriptions at a pharmacy or making a copay at a doctor's office. . . . no POS device *needs* to be 'reprogrammed, customized, or otherwise altered with respect to its software or hardware for use in the card system', in order to support Cigna cards functions for use in the system." (emphasis added)). Additionally, Alexsam argues that the testimony of Alegeus (an intermediary partner of Cigna) creates a genuine of issue of material fact as to whether Alexsam can satisfy the "unmodified existing standard POS device" term. The testimony Alexsam relies upon is reproduced below:

> Q. Does Alegeus provide merchants with instructions to modify any point-of-sale terminals that are going to be used to process its products?
> A. No.
> Q. So when someone takes their Cigna-branded card and they swipe it at the merchant's point-of-sale terminal, so I'm starting in the bottom left-hand corner of exhibit 10, what happens? What's the first step?
> A. So that transaction is sent on, in this case the Visa network because it's a Visa debit card. The authorization makes its way through the Visa network, which includes the merchant acquirer. It is sent through to the Alegeus system for authorization or denial, is the first step –
> Q. Let me stop you there, if you don't mind. So I really want to parse this piece by piece. So when you say a transaction is sent from the terminal through the Visa network, what does that transaction consist of?
> A. It's a standard debit card transaction. It's an ISO message that is required by the networks, so not unique to Alegeus in that sense. It is sent through the network itself, and it includes the amount that's being spent, it includes the merchant category code of where it's being spent, as the two primary mechanisms. And obviously the card number is in there as well. So that, A, it's routed by the network to actually be sent to Alegeus based on, again, the bank identification number, or BIN. And it's those components that we then take into consideration when we're performing an authentication.

Dkt. No. 138-4 at 11.

At no point in either Mr. Zatkovich's report or Mr. Holmes' deposition did either one offer any evidence "*whether modifications have, in fact, been made for any reason*" to the POS terminals used in the accused system. *IDT*, 715 F.3d at 1342 (emphasis added). Alexsam's witnesses do not

know, or even suggest, whether "no modifications were actually made to the terminals [of the accused system]." *Id*. Indeed, Mr. Zatkovich confirms he is uninformed about whether the POS devices used in the accused system were unmodified. Dkt. No. 111-14 at 16 (" Q: That they're intended to be used at standard retail point-of-sale devices perhaps, but do you have any evidence that they actually, in fact, were used at unmodified point-of-sale devices during the relevant time frame? A:  Do I have proof if any of the thousands of cards and the hundreds of thousands of transaction[s] that occurred actually occurred at an unmodified standard retail point-of-sale device? No, I have no personal knowledge of that."). Though Alexsam need not necessarily have conclusive proof at this summary judgment stage that every transaction occurred at an "unmodified standard POS device," it does need enough evidence from which a reasonable jury could conclude that the transactions did ***actually*** occur at "unmodified standard POS device[s]." Alexsam has provided none.  Alexsam's evidence in this case, like its evidence in *IDT*, simply shows that modifications of standard existing POS devices were not *required* for use in the accused system. Binding precedent establishes that such evidence is insufficient.

IV.     **CONCLUSION**

Accordingly, the Court recommends the Non-Infringement Motion be **GRANTED** and the Infringement Motion be **DENIED** and that this action be dismissed with prejudice.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc). Any objection to this Report and

Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 21st day of September, 2021.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE