**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ALEXSAM, INC., *Plaintiff*, | § | |
| v. | § | Case No. 2:20-cv-081-ALM-RSP |
| CIGNA CORPORATION, ET. AL., *Defendants*. | § | |

**MEMORANDUM ORDER**

Before the Court is Defendants' Motion For Exceptional Case (Dkt. No. **270**). In the motion, Defendants argue that Plaintiff AlexSam Inc's positions regarding U.S. Patent No. 6,000,608 (the "'608 Patent") warrant sanctions under 35 U.S.C. § 285 because they are "exceptional." The Court having found that this case stands out among all the cases the Court has been assigned in more than 30 years, the motion is hereby **GRANTED**.

## I. BACKGROUND

### A. The Patent and this Litigation

On March 18, 2020, AlexSam filed the present lawsuit. AlexSam alleges the Defendants infringe Claims 32 and 33 of U.S. Pat. No. 6,000,608 ("'608 Patent"). Dkt. No. 1 ⁋ 1. The '608 Patent, entitled "Multifunction Card System," issued on December 14, 1999, and bears a filing date of July 10, 1997. Claims 32 and 33 of the '608 Patent (emphasis supplied) recite:

32. A multifunction card system comprising:

a. at least one debit/medical services card having a unique identification number encoded on it comprising a bank identification number approved by the American Banking Association for use in a banking network;

b. a transaction processor receiving card data from an *unmodified existing standard point-of-sale device*, said card data including a unique identification number;

c. a processing hub receiving directly or indirectly said card data from said transaction processor; and

d. said processing hub accessing a first database when the card functions as a debit card and said processing hub accessing a second database when the card functions as a medical card.

33. The multifunction card system of claim 32, wherein the unique identification number further comprises a medical identification number.

AlexSam alleges that Defendants infringe the '608 Patent by providing multifunction card systems that allow their customers to access medical accounts (e.g. Health Savings Accounts) to purchase medical items or services. Dkt. No. 1 ⁋ 1.

**B. Previous Litigation**

The '608 Patent has been the subject of substantial litigation before this Court (though not necessarily Claims 32 and 33) several times over the last two decades. *See e.g. AlexSam, Inc. v. Datastream Card Services, Ltd., et al.*, No. 2:03-cv-337 (E.D. Tex. 2003) ("*Datastream*"); *AlexSam, Inc. v. IDT Corp.*, No. 2:07-cv-420 (E.D. Tex. 2007) ("*IDT* District Court Case").[1] The *IDT* District Court Case and its subsequent appeal are particularly noteworthy. *AlexSam, Inc. v. IDT Corp.*, 715 F.3d 1336 (Fed. Cir. 2013) ("*IDT*").

In the *IDT* District Court Case, AlexSam accused defendant IDT of infringing claims 57 and 58 of the '608 Patent by activating phone cards and prepaid gift cards. *See IDT*, 715 F.3d at 1339. AlexSam accused IDT of controlling systems by which the various cards could be activated. *See id*. at 1339–40. In the *IDT* District Court Case, the jury returned a verdict in favor of AlexSam on all issues. *Id*. at 1341. One issue in the appeal of the *IDT* District Court Case was whether AlexSam presented sufficient "evidence that the Walgreens and EWI systems included 'an unmodified existing standard retail point-of-sale device.'" *Id*. The Federal Circuit concluded that AlexSam did not sufficiently carry its burden to prove infringement. *Id*. at 1342 ("We conclude

[1] Dkt. No. 58-6 contains both the *Datastream* and *IDT* District Court Case claim construction Orders.

that AlexSam failed to present substantial evidence that the terminals used in IDT's Walgreens and EWI systems 'ha[d] not been reprogrammed, customized, or otherwise altered with respect to [their] software . . . for use in the card system.'").

## II. LEGAL STANDARD

### A. 35 U.S.C. § 285

A district court "may award reasonable attorney fees to the prevailing party" if the case is "exceptional." 35 U.S.C. § 285.[2] A case is "exceptional" if it "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).

"[C]ourts contemplating an award of attorney's fees should consider the totality of the circumstances in the case." *Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, 2014 WL 6756304, at *3 (E.D. Tex. Aug. 6, 2014) (Dyk, J., sitting by designation) (citing *id.*). "The totality of the circumstances standard is not, however, an invitation to a 'kitchen sink' approach where the prevailing party questions each argument and action of the losing party in an effort to secure attorney's fees." *Id.* "[T]he mere fact that the losing party made a losing argument is not a relevant consideration; rather, the focus must be on arguments that were frivolous or made in bad faith." *Id.* at *4 (citing *Octane*, 572 U.S. at 548).

Whether a case is exceptional is within the sound discretion of the district court. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 (2014). The Supreme Court and Federal Circuit have recognized that it is "the district court . . . that lives with the case over a prolonged period of time" and as such, "is better positioned to decide if the case is exceptional." *Id.* (internal

[2] The '608 Patent was issued pre-AIA, however § 285 is unchanged post-AIA.

quotation marks and citation omitted); *see also Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 953 (Fed. Cir. 2010) (expressing "reluctance to second-guess the judgment of trial judges who typically have intimate knowledge of the case").

## III. <u>ANALYSIS</u>

The Court has detailed the tortured application of the claim construction relied upon by Plaintiff in opposing the motion for summary judgment filed by the Defendants. *See Report and Recommendation* (Dkt. No. 218) (Sept. 21, 2021). Independent Claim 32, and thereby Claim 33 which depends from it, contains the term "unmodified existing standard point-of-sale device."[3] That term was construed in earlier litigation as: "a terminal, for making purchases, that is of the type in use as of July10, 1997, and that has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware for use in the card system." Importantly, this same construction was agreed to by AlexSam at the outset of this case, long before claim construction, long before the summary judgment motion. *See* Joint Claim Construction and Prehearing Statement (Dkt. No. 46-1 at 4) (Jan. 12, 2021). This construction was not a surprise imposed upon Plaintiff by the Court. In case there be any doubt, AlexSam's Claim Construction Brief argued that this term "has been consistently construed by many courts, including this Court, since June 10, 2005 in the *Datastream* case [citation omitted]. AlexSam proposes that this same construction again be applied in this case as there is no reason to make changes or qualifications." (Dkt. No. 58 at 34).

Equally important is the fact that the Federal Circuit had already long ago opined on the type of evidence that would be necessary to meet this limitation. In 2013, in the *IDT* case, the

[3] Independent Claim 34 has the word "retail", while Independent Claim 60 does not.

Court addressed AlexSam's theory that it could meet the limitation by showing that no modifications to the POS device were *necessary*, as opposed to showing that no modifications had been made:

> "At no point did Baker testify, except in the cursory manner described above, that no modifications were actually made to the terminals' software in order to allow them to activate IDT's cards …. AlexSam's other witness, Brent Hranicky, testified that no modifications were 'necessary' to allow a standard POS terminal to read an IDT card, and that terminals in use in 1997 could perform 'the same basic functions for use in a card system that are performed by point-of-sale devices today …. We conclude that AlexSam failed to present substantial evidence that the terminal used in IDT's Walgreens and EWI systems 'had not been reprogrammed, customized, or otherwise altered with respect to [their] software … for use in the card system.'"

*AlexSam, Inc. v. IDT Corp.*, 715 F.3d 1336, 1341-42 (Fed. Cir. 2013). Plaintiff argues, in response to this motion, that it understood the Federal Circuit to be criticizing only its expert's testimony. So it argues that it intended in this case to make a different showing. However, after reviewing the Report and Recommendation on the summary judgment motion, and all objections thereto, Judge Schroeder found that "here, there is no substantial difference between what was presented in *IDT* and what AlexSam presented before this Court at summary judgment. (Dkt. No. 248 at 4). Judge Schroeder went on to find that "the evidence AlexSam presented in this case is indistinguishable from the evidence the Federal Circuit has already deemed to be insufficient in *IDT*. Thus, even construing all facts in favor of AlexSam there is no possibility that AlexSam can carry its burden here to prove infringement." Id. at 4-5.

As was noted in the Report and Recommendation, AlexSam's argued understanding of the construction would require that a POS terminal will be deemed "modified" only if it "require[s] single-function dedicated hardware" or software to operate in the accused system. (Dkt. No. 218 at 7). The result would be that if the card works with a POS device then the system is

"unmodified." Nothing in the intrinsic record of the '608 Patent, in any of the extensive litigation surrounding it, or in the record of this case, makes such an understanding in any way reasonable.

Perhaps the most exceptional aspect of AlexSam's litigation conduct is that AlexSam criticized the Federal Circuit's *IDT* decision and asked this Court to disregard binding precedent. Dkt. No. 137 at 21. ("The Federal Circuit case cited by Defendants suffers from the same overbreadth and similarly did not consider the meaning of the critical phrase."); see also Id. at 4 ("[the *IDT*] case cited by Defendants made the same oversight as Defendants' expert Mr. Dreifus—both overlooked the phrase 'for use in the card system' portion of the construction—and misapply this construction as to what can and cannot be modified on the POS device."); Dkt. No. 161 at 5–6 ("[T]he court in *IDT* and Defendants, including Mr. Dreifus, fail to properly apply the Court's construction for the 'unmodified existing standard [POS] device' limitation, in particular the 'for use in the card system' portion of the construction. . . . **the court in *IDT* erred** by ruling that the POS devices cannot be modified in any way as opposed to the plain language of the construction that merely requires any such modifications be restricted to modifications 'for use in the card system.'" (emphasis added)).

The argument that this Court should disregard the holding of the Federal Circuit on construction of the same limitation in another claim of the patent in suit is simply extraordinary.

**IV. Fees**

In its Motion, Defendant requests their entire defense cost of $1.757 million. Dkt. No. 270 at 16. The Court has reviewed the billing records submitted by Defendants at Document 280-2 and finds that neither the hours billed nor the hourly rates appear unusual or excessive for patent litigation in this district. In its reply brief, filed after the filing of Defendant's billing records, AlexSam does not address any perceived excess in the request.

"It is well established that district courts have "considerable discretion" to determine the amount of reasonable attorney fees under § 285." *Drop Stop LLC v. Jian Qing Zhu*, 757 F. App'x 994, 999 (Fed. Cir. 2019). This discretion is grounded in the "district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Id.*

The Court has found that Plaintiff's litigation conduct was "exceptional" under 35 U.S.C. § 285, for all claims of the '608 patent since filing. The Court finds that all of the fees and expenses sought in the motion should be awarded.

## V. CONCLUSION

Having considered the motion, and for the reasons discussed above, the motion is **GRANTED**. AlexSam, Inc. is **ORDERED** to pay to Cigna Corporation, through its counsel of record, within 30 days, attorney's fees and expenses in the amount of $1,757,577.25.

**SIGNED this 18th day of September, 2026.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE